
BC
FILED
8/11/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
EW

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

UNITED STATES OF AMERICA,
Plaintiff,
v.
RONNIE MARTIN;
Holy Prophet known as "Ronnie Bo,"
Defendant.

**CASE NUMBER 17-CR-597**
**HONONABLE REBECCA PALLMEYER**
\*\*\*
**REQUEST TO REJECT REVOCATION RECOMMENDATION**
**&**
**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** *VI*

FOR THE RECORD, United States Probation Officer Alicia sturges recommended that the Defendants supervised release be revoked because of alleged violations which are all based upon inaccurate information and mistaken reports. This assertion is elucidated herein.

**ALLEGED VIOLATIONS**

Subsequently, the following alleged violations are being contested and refuted:

**Alleged violation No. 1 (Grade A Violation, Mandatory Condition): Defendant shall not commit another Federal, State or local crime.**

On or about July 17, 2024, the District Attorney's Office "no-processed" Case # C2407120076 (Assault Battery/Intent To Cause Bodily Harm, While Armed) because all of the evidence revealed that the Defendant, Ronnie Martin had only defended himself and his mother from being harmed by Timothy Trudo (T.T.) who had approached the Defendant and his mother in an intimidating manner, with a gun.

Martha Trudo, the witness, made a statement to Milwaukee Police indicating that the only gun involved in the altercation was held by Timothy Trudo and not by the Defendant. Timothy Trudo had dropped the gun while tussling with Mr. Martin, as corroborated by the witness. Martha Trudo, the witness contacted Milwaukee Police and turned the gun in to them as she explained that Timothy Trudo had approached Mr. Martin a gun attempting to either harm or intimidate Mr. Martin.

Therefore, the "falsified charges" against Mr. Martin was "no-possessed" as the District Attorney determined that he did not commit the alleged crime.

**Alleged violation No. 2 (Grade A Violation, Mandatory Condition): Defendant shall not possess a firearm, destructive device, or other dangerous weapon.**

There is no evidence of the Defendant possessing a firearm, destructive device, or other dangerous weapon. Other than an alleged victim who recanted her statement, this alleged violation is based solely upon allegations of the actual perpetrator who is not a credible source, as witnesses corroborated that he (T.T.) is the one who actually possessed the firearm and intended to harm Mr. Martin.

And, based upon the statement of an independent witness, Defendant did not possess a firearm but merely defended himself and his mother from an armed man (T.T.) who apparently intended to harm the Defendant with a gun. There are also several other witnesses who are willing to testify that the Defendant did not possess a gun and merely defended not only himself but the residence of 3219 North 10th Street, as well.

**Alleged violation No. 3 (Grade B Violation, Mandatory Condition): Defendant shall not commit another Federal, State or local crime.**

The Defendant has no pending charges as he obviously did not commit another Federal, State or local crime.

The Defendant, Mr. Martin is suffering severe mental anguish and emotional distress from being arrested at gunpoint and sitting in jail for an alleged crime that was fabricated against him while the officers had knowingly been provided with misleading and inaccurate information. The officers either ignored or recklessly disregarded the statement of an independent witness which proved the Defendant's innocence.

Furthermore, U.S. Probation could be guilty of committing a Brady violation by disregarding or withholding information from the Court which would have prevented the arrest warrant which forced the U.S. Marshals to conduct the false arrest of the Defendant and caused him to suffer hours of false imprisonment. To establish a Brady violation, a defendant must show that the evidence at issue was favorable to the accused, either because it is exculpatory or is impeaching; that the evidence was suppressed, willfully or inadvertently by the prosecution team.

If the U.S. Attorney asks for the Defendant's supervised release to be revoked, the prosecution team would be committing a Brady violation and U.S. Probation would be the causation. The evidence which proved that Mr. Martin did not commit the alleged crime is obviously being suppressed which could result in prejudice and deliberate indifference.

**Alleged violation No. 4 (Grade C Violation, Mandatory Condition): Defendant shall refrain from any unlawful use of a controlled substance and submit one drug test within 15 days**

**of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.**

FOR THE RECORD, the Defendant only tested positive for a controlled substance (THC) once within 3-years other than substances that are lawfully prescribed to him by his doctor.

The special report from Chicago based U.S. Probation Officer Alicia sturges is critically erroneous, inaccurate and misleading as it suggests that Mr. Martin has more than one positive urine screen.

In fact, after testing positive for THC once, the Defendant successfully completed a 90-day drug testing program which displays that he has maintained sobriety and been in compliance with refraining from unlawful use of a controlled substance.

**Alleged violation No. 5 (Grade C Violation, Discretionary Condition #4): Defendant shall seek, and work conscientiously at, lawful employment (subject to the probation officer's approval) or, if you are not gainfully employed, you shall pursue contentiously a course of study or vocational training that will equip you for employment.**

The following image is a display of the Defendant's new book entitled 'Challenging The Illuminati' which is not only proof of productive activity but it generates income.

To write such a book indicates that the Defendant has pursued, contentiously, a course of study that will equip him for employment which should be subject to the probation officers approval. The time and effort that it takes to write such a book should be perceived by U.S. Probation and the Court as equivalent to or more rewarding than working a 9-5 job.

It proves that the Defendant has been devoting his time productively to his craftsmanship. And if U.S. Probation or the Court would read or even skim through this book they would be convinced that such a book takes months of daily research and studies to device.



https://www.amazon.com/dp/B0D3BRDRQC

**<u>CLOSING ARGUMENTS</u>**

Reimposition of supervised release is appropriate. However, in spite of the recent "false allegations" which are the causation of the revocation hearing contested herein, the Defendant hereby request that the remaining 2-years of his supervised release be terminated pursuant to 18 U.S.C. § 3583(e)(1).

On May 28, 2024, months prior to Chicago based U.S. Probation requesting to revoke the supervised release of Mr. Martin, a fifth motion for early termination of supervised release was filed by Mr. Martin.

Within the motion, Mr. Martin explained how the environment in Milwaukee was detrimental to his well-being, especially at the residence of 3219 North 10th Street where allegations of crime were later made against him by his uncle (T.T.) who had been terrorizing the entire residence for years, prior to the events of July 12, 2024. Mr. Martin requested to move with his family in Texas to avoid issues at his Milwaukee residence several months prior to the false allegations made against him by T.T.

In order to avoid problems with his uncle at the 3219 North 10th Street residence, Mr. Martin temporarily moved to 4571 South Whitnall Ave in the City of St. Francis with his daughter's

mother. But Mr. Martin suddenly realized that this residence wasn't compatible with him either, as he witnessed his daughter being abused by her mother, which caused hostile disagreements between the parents.

On July 3, 2024 (as cell phone records would reveal, if subpoenaed) Keitha Turner (K.T.) made false allegations of strangulation against Mr. Martin after he refused to respond to her calls and texts. Keitha Turner asked Mr. Martin to take her to see the fireworks show. Those texts were followed by texts from Keitha stating that she was going to get Mr. Martin locked up, all because she was upset with him for ignoring her calls and because Mr. Martin had told her that he was going to report her to CPS for child abuse.

Later that night, Keitha contacted the St. Francis police and falsely alleged that Mr. Martin had beaten her for hours and strangled her (without any evidence). Moreover, there is surveillance cameras all around Keitha's residence which proves that Mr. Martin was not even in the vicinity at all during the time that the allegations had allegedly occurred, and after Mr. Martin had mentioned to Keitha that he would present such favorable information to the Milwaukee County District Attorney's Office, Keitha decided to recant her fabricated statements and all charges relating to these events were also "no-possessed."

When things didn't work out at the St. Francis residence, Mr. Martin was forced to move back to the residence where on-going issues were escalating. Had the Courts addressed and approved his reasonable request for early termination of supervised release, Mr. Martin could have avoided such circumstances as he eagerly tried to do and while there are no pending charges against him, there would also be no revocation hearing pending.

The Defendant's 5-year term of supervised release began on August 13, 2021. As of August 13, 2024, Defendant has successfully completed 3-years of supervised release. With that, Defendant asks the Court to consider this motion for early termination of supervised release during the revocation hearing.

Other than the false allegations and mistaken reports refuted herein Mr. Martin had been in total compliance with all obligations of his supervised release. Furthermore, Mr. Martin had made arrangements for counseling and mental health treatment weeks prior to these events.

Title 18, section 3583(e)(1) of the United States Code authorizes the Court to terminate a Defendant's term of supervised release at any time after the expiration of one year of supervision if the Court is "satisfied that such action is warranted by the conduct of the Defendant."

Section 3583(e) directs the Court to consider the purposes set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7) in deciding whether to terminate a term of supervised release. The Defendant conspicuously fits the criteria for early termination of supervised release because he had zero violations within the first full year term of supervision

which he served remarkably and all other alleged violations thereafter have hereby been refuted.

On February 16, 2012, the Honorable Robert Holmes Bell, Chair of the Committee on Criminal Law of the Judicial Conference, issued a memorandum to all United States District Court Judges encouraging them to grant early termination of supervised release in appropriate cases as an effort to reduce expenditures in the probation and pretrial services programs.

Terminating "appropriate cases before they reach their full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." Judge Bell's memorandum notes that supervision costs approximately $3,938 per year per case. Analysis by the Administrative Office of the Courts indicates that offenders who received early :::: were "arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often." Accordingly, "[f]rom a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize public safety." Id.

The Court is often called upon to impose serious consequences for defendants who violate supervised release. So in contrast, the court should reward those in compliance.

WHEREFORE, in reconsideration to his "36-months" of commendable reentry into the community on supervised release, Defendant hereby requests that this Court order his term of supervision to be terminated under 18 U.S.C. § 3583(e).

Dated this 12th day of August, 2024.

Respectfully submitted,

/s/
Ronnie Martin;
Holy Prophet known as Ronnie Bo, Defendant.
Author of **CHALLENGING THE ILLUMINATI**

3219 North 10th Street
Milwaukee, WI 53206